**[J-89A&B-2015][M.O. – Donohue, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 694 CAP |
| | : | |
| Appellant | : | Appeal from the Order entered on |
| | : | 12/30/2013 in the Court of Common |
| | : | Pleas, Criminal Division of Philadelphia |
| v. | : | County at Nos. CP-51-CR-0417523- |
| | : | 1992, CP-51-CR-0417792-1992 and |
| | : | CP-51-CR-0418063-1992 |
| CHRISTOPHER WILLIAMS, | : | |
| | : | SUBMITTED: January 20, 2016 |
| Appellee | : | |

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 695 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | 12/30/2013 in the Court of Common |
| | : | Pleas, Criminal Division of Philadelphia |
| v. | : | County at Nos. CP-51-CR-0417523- |
| | : | 1992, CP-51-CR-0417792-1992 and |
| | : | CP-51-CR-0418063-1992 |
| CHRISTOPHER WILLIAMS, | : | |
| | : | SUBMITTED: January 20, 2016 |
| Appellant | : | |

*CONCURRING OPINION*

**CHIEF JUSTICE SAYLOR**                                        **DECIDED: July 19, 2016**

Although I concur in the result, I have difficulty with the notion that the failure of

Appellant's trial counsel to adduce scientific blood-spatter or blood-flow evidence

relative to an impeachment concern meets the prejudice threshold. To the degree that

this evidence undercuts James White's testimony that two of the victims were killed in

the back a van, and that the body of at least one was thrown or pushed from the

vehicle, it would seem to me that the impact could have been considerably countered by

the prosecution through the mere observation that the bodies apparently had been exposed to the elements for a substantial period of time before they were discovered. *See, e.g.*, N.T., July 22, 1993, at 122-123 (reflecting the testimony of a detective that Kevin Anderson's body "had been obviously been [sic] there for quite some time," "[h]is clothes were soaked," and "[t]here was not a great amount of blood around the head area, which you would [n]ormally see from a head wound," since "*[i]t had like been washed away during the night by the rain*" (emphasis added)).

I also find it problematic to charge criminal defense attorneys with pursuing this type of scientific evidence relative to an impeachment concern, particularly where there is another readily available trial strategy that would seem to carry as much or more force. In this regard, three experienced trial attorneys relied upon cross-examination of the Commonwealth's experts, as well as arguments invoking the jurors' common experience, to highlight the incongruity arising from the fact that none of the victims' bodies or clothes evidenced signs of injury or disturbance on account of having been, as James White described it, thrown or pushed from a moving vehicle.[1]

---

[1] One difficulty facing the defendants in their efforts to counter the core elements of White's testimony was the unlikelihood that two brothers and their companion from New York would have been randomly killed on the same night in an uncoordinated fashion by different actors in different areas of Philadelphia. Rather, the circumstances surrounding the murders strongly suggested some sort of coordination in the killings entailing one or more elements of transportation. In addition to supplying such an explanation, White's account was complemented by substantial corroboration in material respects, including through the testimony of the sister of two of the victims describing a recent meeting between Appellant and the three victims in New York. *See* Majority Opinion, *slip op.* at 39 n.24 (discussing this and other corroborative details); *see also* N.T., July 29, 1993, at 82 (reflecting the depiction, by Appellant's trial counsel, of the sister as "a crucial witness for" the prosecution, as "[s]he gives corroboration that [Appellant] was involved in the shooting of those three men"). Although certainly evidence tending to disprove discrete details of White's account could have affected the jurors' assessment of its truthfulness, from my point of view, the corroboration of other important details and the absence of any other plausible explanation for the three (continued…)

For these reasons, I am more concerned about the trial judge's conduct in essentially inserting himself into the case by thwarting relevant and legitimate cross-examination concerning the condition of the bodies and clothes, and effectively directing the jurors not to take such matters into account. For example, the following lines of discourse occurred during the cross-examination of a medical examiner by a codefendant's counsel:

> Q. How about if the body is pushed from a moving van, would you expect to see some bruising or scrapes?
>
> [The Prosecutor]: Objection. We don't know how fast the van was going or whether it was slowing to a halt.
>
> The Court: I will sustain the objection.
>
> [Counsel for Codefendant Bennett]: This is the Commonwealth's case we're talking about.
>
> The Court: I will sustain the objection.
>
> [Counsel for Codefendant Bennett]: This is evidence presented by the Commonwealth.
>
> [The Prosecutor]: We are talking about questions posed to Mr. White, with dramatic flare being injected by [defense counsel].

---

(…continued)
apparently related killings diminishes the likelihood that such impact would have been dispositive.

In this regard, it is worth noting that the jury acquitted Appellant's codefendant Rick Bennett -- who White depicted as having been involved in the planning and execution of the robberies and homicides in issue -- of most of the criminal charges lodged against him. Thus, it can be inferred that the jurors, in fact, doubted or disbelieved some very material details of White's account while nevertheless returning verdicts of guilt with respect to Appellant.

The Court:  I will sustain the objection.  *There are too many variables.  This witness cannot answer that.*

Q.  You just indicated the surface makes a difference, is that correct?

A.  Yes.

Q.  As you talk about –

The Court:  Hold it.  I will sustain an objection.

Look, if someone is thrown from a moving van and lands on a pile of soft rags, that would have no effect.

[Counsel for Codefendant Bennett]:  That's not the evidence.

[Counsel for codefendant Wilson]:  It's not the evidence in this case.  The evidence in this case is they were thrown out onto the street.

[Counsel for Appellant]:  That was testified to by the witness.

[Counsel for Codefendant Wilson]:  From a moving van.

The Court:  *This doctor cannot answer a question based on his examination as to exactly what happened to the body after the shooting.*

[Counsel for Codefendant Wilson]:  Judge, we are allowed, Your Honor, to ask a witness –

The Court:  You are allowed to ask the witness what I allow you to ask.

[Counsel for Codefendant Wilson]:  That's patently obvious, Your Honor.

The Court:  I will sustain the objection.

N.T., July 28, 1993, at 162-164 (emphasis added); *see also id.* at 165 (reflecting the Court's comments "[t]here are too many variables here," and "[t]his doctor cannot possibly tell you how the body fell without some external markings on the body").

Furthermore, the court admonished:

> I will ask the jury to disregard that rather silly remark of [counsel for codefendant Wilson].
>
> This court has the duty of allowing all proper questions and *not allowing a lot of nonsensical questions*.

*Id.* at 168 (emphasis added). The trial court thus not only precluded relevant and legitimate cross-examination, it discounted and denigrated the defense position as to the matter and, again, essentially instructed the jury to disregard a material avenue of impeachment relative to the Commonwealth's central witness.

Particularly given that the inappropriateness of the trial court's conduct is patently obvious from the record, was highlighted through serial mistrial motions, *see, e.g., id.* at 171, and was actually one of the issues raised in the post-sentence motions, *see* Majority Opinion, *slip op.* at 44 n.28, I agree with the PCRA court that the stewardship of Appellant's counsel on direct appeal in failing to advance a claim was deficient. *See Commonwealth v. Williams*, CP-51-CR-0417523-1992, *et al., slip op.* at 49 (C.P. Phila. Dec. 30, 2013) ("[T]here can have been no reason to consciously refrain from raising the trial court's clear abuse of discretion in its improper and grossly unbalanced limiting of cross-examination of the medical experts before the Supreme Court."). In terms of prejudice, the majority ably develops the many other problems with the testimony by the corrupt and polluted source who served as the Commonwealth's central witness against Appellant. *See* Majority Opinion, *slip op.* at 39-40. The trial court's inappropriate and substantial downplaying of a material impeachment concern in relation to such

testimony seems to me to be an error of an essentially structural magnitude, impairing the integrity of the verdict.

Justice Dougherty joins this concurring opinion.